UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERRENCE TURNER,

                      Petitioner,

       – against –

EARL BELL,

                     Respondent.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

18-CV-2539 (ERK)

KORMAN, *J.*:

On the morning of October 11, 2010, petitioner Terrence Turner assaulted and raped his wife repeatedly for three hours.  ECF No. 9-4 at 18–20.[1]  At trial, petitioner testified on his own behalf, and defended himself on the ground that the sex was consensual and that his wife made false accusations because she was upset with him.  After trial, a jury convicted petitioner of two counts of rape in the first degree in violation of N.Y. Penal Law § 130.35(1) and one count of assault in the third degree in violation of N.Y. Penal Law § 120.00(1).  Petitioner was sentenced to 25 years of imprisonment for the first rape count and 15 years of imprisonment on the second rape count, running consecutively.  ECF No. 13 at 225–26.  Petitioner was also sentenced to one year of imprisonment on the assault count, to run concurrently with the 25-year sentence.  *Id.*

On direct appeal, petitioner raised several challenges to his conviction.  Petitioner's counseled brief argued that he was deprived of his statutory speedy trial right because of the prosecution's delay.  ECF No. 9 at 44.  He also argued his constitutional right to present a defense was violated because the court refused to allow cross-examination of the victim regarding her

---

[1] All citations to the record are to the page number of the PDF, not the internal pagination of the exhibits.

1

initial report and denied an adjournment to allow the defense to prepare to present additional impeachment evidence. *Id.* at 55. Petitioner also argued that his sentence was excessive. *Id.* at 66. In a supplemental pro se brief, petitioner argued that he was deprived of his due process rights because (1) the indictment was duplicitous, and (2) admission of evidence of uncharged crimes unfairly prejudiced his defense. ECF No. 9-1 at 2.

The Appellate Division modified and affirmed. *People v. Turner*, 145 A.D.3d 745, 745–46 (2d Dep't 2016). Petitioner's challenge under N.Y. Crim. Proc. Law § 30.30(1)(a), the speedy trial statute, was rejected because the total time chargeable to the prosecution was less than the six months allowed. *Id.* at 746. Also rejected was the argument that the curtailment of cross-examination of the victim kept "from the jury relevant and important facts bearing on the trustworthiness of crucial testimony" in violation of petitioner's Sixth Amendment rights. *Id.* (quoting *People v. Ashner*, 190 A.D.2d 238, 247 (2d Dep't 1993)). The Appellate Division held that the trial court properly prevented petitioner from introducing extrinsic evidence of prior conduct to impeach the victim's credibility. *Id.* And it rejected as meritless all the challenges raised by petitioner's supplemental brief. *Id.* Finally, it held that petitioner's sentence was excessive and modified the judgment to make the sentences imposed on the convictions of rape in the first degree run concurrently rather than consecutively. *Id.* The Court of Appeals denied petitioner's application for leave to appeal. *People v. Turner*, 28 N.Y.3d 1189 (2017). The petition renews all the challenges raised in petitioner's counseled and supplemental briefs on direct appeal. *See* ECF No. 1.

## DISCUSSION

A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act allows a federal court to grant habeas relief to a state prisoner only if a state court's adjudication "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000).  A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Williams,* 529 U.S. at 407–08.  A petitioner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.  In those cases, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.* at 102; s*ee also Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) (*per curiam*) ("[W]e must determine what arguments or theories . . . could have supported the state court's determination. . . .  Then we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories.") (internal quotation marks omitted).

B.  *Speedy Trial*

Petitioner argues that he "was deprived of his statutory right to a speedy trial by the [prosecution's] failure to exercise due diligence in obtaining his DNA."  ECF No. 1 at 6. Petitioner's "claim that the state court erred in its decision regarding his speedy trial rights under New York state law is not cognizable on habeas review."  *Singh v. Fischer*, 2004 WL 2999106, at *4 n.4 (E.D.N.Y. Dec. 28. 2004); *see also Macaluso v. Keyser*, 2020 WL 8880941, at *4 (E.D.N.Y. Dec. 15, 2020).  In his reply, petitioner argues that his petition raised a constitutional speedy trial reviewable under *Barker v. Wingo*, 407 U.S. 514 (1972).  However, petitioner styled his own ground for relief as arising from deprivation of "his *statutory* right to a speedy trial," ECF No. 1 at 6 (emphasis added), and he has never sought to amend his petition to reflect a constitutional claim.  Even if he had, the claim would be barred as unexhausted because neither petitioner's counseled brief nor his supplemental brief on direct appeal alleged a violation of his *constitutional* right to a speedy trial.  Raising a claim pursuant to § 30.30 is not sufficient to exhaust the separate constitutional claim.  *Gibriano v. Att'y Gen.*, 965 F. Supp. 489, 491–92 (S.D.N.Y. 1997); *see also Rodriguez v. Superintendent*, 549 F. Supp. 2d 226, 237–38 (N.D.N.Y. 2008).

In any event, this unexhausted claim may also be denied because it is without merit.  *See* 28 U.S.C. § 2254(b)(2).  Under *Barker v. Wingo*, petitioner must make an initial showing "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Doggett v. United* States, 505 U.S. 647, 651–52 (1992).  Once a threshold showing is made, four factors govern the merits analysis: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012).  Petitioner was arraigned in criminal court on October 12, 2010.  The jury in his case was not sworn until February 26, 2013.  ECF No. 11 at

85; *see* N.Y. Crim. Proc. Law § 1.20(11) ("A jury trial commences with the selection of the jury"). This 28-month delay qualifies as "presumptively prejudicial" and triggers the full *Barker* inquiry. *United States v. Moreno*, 789 F.3d 72, 82 (2d Cir. 2015).

Petitioner's claim founders on the second *Barker* factor: the reason for the delay. "[T]he Sixth Amendment is rarely violated if the delay is attributable entirely to the defendant[] or if the delay serves some legitimate purpose such as time to collect witnesses[ or] oppose pretrial motions." *United States v. Cabral*, 979 F.3d 150, 158 (2d Cir. 2020) (internal quotations omitted). In rejecting petitioner's statutory speedy trial claim, the Appellate Division held that the delay chargeable to the prosecution was less than six months. *Turner*, 145 A.D. 3d at 746. Indeed, much of the delay was attributable to petitioner's own refusal to comply with a court order that he provide a DNA sample, which forced the prosecution to take the time to obtain the evidence from a state database. As the prosecution explained in July 2011, the office policy was to re-swab defendants for DNA testing instead of using the state database because the process of "retrieving all of the records, locating all of the witnesses from Albany, and having them come to Brooklyn to testify" was generally less efficient and could take significant time to complete. ECF No. 5 at 7. Using the state database to prove that petitioner was the source of the DNA recovered from the victim "would require [the prosecution] to investigate the identities, whereabouts, and availability of all the people who were involved in the DNA testing and profiling of [petitioner] for the DNA databank." *Id.* at 5. As it happened, one of those people had left state employment and was residing outside New York, necessitating further delay to locate that person. *Id.* at 6. Much or all of this delay could have been avoided had petitioner complied with the court order to supply a DNA sample.

Finally, petitioner fails to identify any prejudice flowing from the claimed delay.[2]   The Second Circuit has "generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." *Cain*, 671 F.3d at 297.   Petitioner's briefing to the Appellate Division did not articulate any theory of prejudice, probably because the state statutory claim he actually exhausted does not require such a showing. *See People v. Malloy*, 137 A.D.3d 1304, 1304 (2d Dep't 2016) ("When a defendant is accused of a felony, the indictment must be dismissed unless the People are ready for trial within six months after the commencement of the criminal action").   A constitutional speedy-trial claim requires more, and petitioner has not carried his burden to show prejudice.

C.  *Evidence of Prior Acts*

Petitioner claims his right to due process was violated by the trial court's admission of evidence of prior charged and uncharged crimes.  *See* ECF No. 1 at 18–20; ECF No. 9-1 at 31. Specifically, petitioner challenges the decision to admit evidence of three incidents that took place prior to the 2010 crimes resulting in the convictions he challenges here. In 2003, the victim reported petitioner to the police for possessing a gun and selling drugs out of her apartment.  That report led to petitioner's conviction and incarceration on a gun charge in 2004.   In April 2009, petitioner ripped out the victim's hair, pushed her, choked her, squeezed her nostrils and almost cracked her back.  ECF No. 10 at 3–4; ECF No. 12 at 216.  After a pre-trial hearing under *People v. Molineux*, 168 N.Y. 264 (1901), the trial court admitted the victim's report and petitioner's subsequent incarceration as probative of motive because the victim planned to testify that the

---

[2] The threshold showing of a period that is presumptively prejudicial — which simply triggers the full *Barker* analysis — "should not be confused with a delay that is so long as to cause 'presumptive prejudice' (*i.e.* prejudice that need not be specifically shown)." *Moreno*, 789 F.3d at 78 n.3.

petitioner had called her a "rat" and a "snitch" while raping her, and the 2009 physical abuse as probative of the forcible compulsion element of the first degree rape charge. ECF No. 10 at 62–67; N.Y. Penal Law § 130.35(1). The trial court denied the prosecution's motion to admit evidence of several other prior incidents of abuse. ECF No. 10 at 62–67.

Both before the Appellate Division and again here, petitioner asserts that this evidence was improperly introduced to prove his criminal propensity and that its probative value was outweighed by prejudice. The Appellate Division rejected the claim as meritless without explaining its reasoning. *Turner*, 145 A.D.3d at 746. Under these circumstances, it is necessary to consider the theories or arguments that could have supported its decision and accord deference unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

While the evidence was surely prejudicial, the trial court admitted it under New York's rules as probative for purposes other than propensity, and the Appellate Division affirmed. *Turner*, 145 A.D.3d at 746. Habeas relief from that judgment is appropriate only if the ruling was so erroneous that it trenched upon petitioner's constitutional right to due process. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013). To reach this standard, introduction of evidence of uncharged criminal conduct must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *see also Torres v. Keane*, 2000 WL 35573160, at *1 (2d Cir. Oct. 12, 2000). "Such unfairness will only result where: '[T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly

significant.'"  *McKinnon v. Superintendent*, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).

The Appellate Division could reasonably have concluded that the introduction of this evidence was not so grossly unfair that it amounted to constitutional error.  Though there is reason to question whether petitioner's past bad acts were probative in the manner described by the trial court, testimony about them was not the type of crucial, critical, and highly significant evidence the erroneous introduction of which will upset the fundamental fairness of the whole trial.  The critical evidence in this case was the victim's testimony about the attack itself, not the recounting of prior bad acts.

D.  *Testimony of the Victim*

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  At the same time, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation omitted).  Petitioner claims his constitutional rights were violated by the trial court's refusal to allow "a) cross-examination of the [victim] regarding her initial report of one rape instead of ten and b) to allow a short adjournment for a defense witness to testify and the introduction of certified medical records contradicting the [victim's] testimony."  ECF No. 1 at 12.  The Appellate Division reasonably rejected both arguments.

1.  *Cross-Examination*

The Sixth Amendment secures to criminal defendants an opportunity for the effective cross-examination of witnesses, but it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Van Arsdall*, 475

U.S. 673, 679 (1986).  "[T]rial judges retain wide latitude . . . to impose reasonable limits on []
cross-examination based on concerns about, among other things, harassment, prejudice, confusion
of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."
*Id.*

Petitioner argues that the trial court improperly prevented him from cross-examining the
victim about statements she made to the grand jury.  The victim testified before the grand jury that
petitioner penetrated her against her will and responded "yes" when the prosecutor asked her
"whether this took place over a period of time."  ECF No. 9-4 at 57.  Subsequently, the prosecutor
re-presented the case to the grand jury specifically to elicit testimony that petitioner had penetrated
her multiple times during the prolonged attack, which provided the basis for multiple charged rape
counts.  *Id.* at 57–58.  At trial, petitioner sought to cross-examine the victim about her initial grand
jury testimony, contending that it was inconsistent with her subsequent statements before the grand
jury and at trial because she initially described only one rape, rather than multiple rapes.  ECF No.
10 at 37–38, 40–42.  The trial court curtailed that cross-examination, *id.* at 77–78, and the
Appellate Division affirmed, holding that the trial court's decision did not "keep[] from the jury
relevant and important facts bearing on the trustworthiness of crucial testimony."  *Turner*, 145
A.D.3d at 746.

The Appellate Division reasonably held that these restrictions did not deprive the jury of
any important facts bearing on the victim's credibility, and therefore fell within the wide latitude
to control cross-examination afforded to trial judges under the Sixth Amendment.  *Id.*  The victim
testified that petitioner penetrated her against her will and that this occurred over a "period of time"
before it "finally stopped."  ECF No. 9-4 at 57.  On re-presentation, the prosecutor elicited
testimony about the specific number of times petitioner penetrated victim.  The second statement
merely elaborated on information the victim was not asked to specify in the first.  The two

statements do not contradict each other and, given that she was not asked, the fact that the victim did not specify the number of times she was penetrated was not a significant omission on her part. The trial court properly prevented petitioner from attempting to impeach the victim with a prior statement that was not inconsistent, which threatened "confusion of the issues" before the jury. *Van Arsdall*, 475 U.S. at 679.

### 2. *Extrinsic Evidence*

Petitioner challenges the trial court's refusal to admit extrinsic evidence to impeach the victim. Petitioner sought to call an attorney witness to testify that, two years prior to the acts for which petitioner was charged, the victim came to his office accompanied by petitioner to recant abuse allegations she had made against him in 2006. ECF No. 12 at 150. Petitioner himself had previously testified that the victim had recanted her allegations to the lawyer "[t]o stop the [police] pursuing, trying to arrest me for something I didn't do to her." *Id.* at 203. The trial court initially allowed petitioner to call the attorney to testify to the fact of the victim's recantation, but not to the content of the conversation in his office. ECF No. 13 at 24. However, defense counsel failed to subpoena the witness, who was unable to appear in court on the appointed day. *Id.* at 11. The trial court refused to allow an adjournment and stated that the attorney's testimony was arguably collateral because it "has to do with recanting something which is not directly at issue here." *Id.* at 25.

Petitioner also sought to admit medical records prepared by a social worker during the victim's hospitalization after the April 2009 attack showing "no visible injuries" and indicating that the victim had answered that she had not been the victim of domestic violence. ECF No. 12 at 185, 187. Petitioner argued that these records contradicted the victim's statements both that petitioner attacked and injured her in April 2009, and that there was a history of abuse in the relationship. Petitioner had denied the April 2009 attack in his testimony, but he had not cross-

examined the victim about injuries sustained during that incident or her answer to the domestic violence question, despite repeatedly confronting her about other inconsistencies related to her children in the records.  ECF No. 12 at 14–17 (victim cross), 199 (petitioner direct), 219–20 (petitioner cross).  The trial court denied admission, explaining that the records were extrinsic evidence on a collateral issue and therefore could not be introduced under the New York rules of evidence.  ECF No. 13 at 7–9.

The Appellate Division affirmed both decisions, holding that the trial court "properly curtailed the defendant's introduction of extrinsic evidence and denied his request to call a witness to contradict the complainant's answers concerning collateral matters, both of which were solely for the purpose of impeaching the complainant's credibility." *Turner*, 145 A.D.3d at 746.  As noted, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," including those related to the admissibility of evidence. *Estelle*, 502 U.S. at 67–68.  Petitioner must show that the effect of the state court's erroneous decision on the question of admissibility under state law was so "extremely unfair" that it violated "fundamental conceptions of justice." *Dowling*, 493 U.S. at 352; *Evans*, 712 F.3d at 133.

The Appellate Division reasonably rejected petitioner's challenge to the introduction of extrinsic testimony that the victim recanted her 2006 allegations.  The victim testified that she only recanted because petitioner "told me that I need to fix what I said . . . and if I didn't fix it I knew he would hurt me so that's why I went to the lawyer with him and fixed it, he would beat me, you know."  ECF No. 13 at 32.  Because the victim admitted that she recanted and explained her reasons, it is not clear what the attorney's testimony would have added.

The Appellate Division arguably erred by affirming the exclusion of the medical records on the ground that they were related to "collateral matters . . . [and were] offered solely for the purpose of impeaching the [victim's] credibility." *Turner*, 145 A.D.3d at 746.  The trial court

admitted evidence of the April 2009 attack as part of the prosecution's case-in-chief because it went "to the issue of the forcible compulsion" element of the first-degree rape charge, and the jury was later instructed that it was to consider the evidence only for "for that limited purpose on the issue of the use of force."  ECF No. 10 at 64; ECF No. 13 at 121.  Yet the trial court also explained its decision to exclude petitioner's extrinsic evidence by stating that "[i]t's a collateral issue, her recitation of what she told the social worker [in 2009] and it does go to her credibility and whether or not she made inconsistent statements . . . but that doesn't necessarily mean . . . you can introduce this because it's extrinsic evidence.  If [it] related to the [charged] incident in question here that might be a different story."  ECF No. 13 at 7.  It is hard to square the trial court's varying declarations.  If evidence of the April 2009 attack was admissible because it tended to establish the forcible compulsion element of the first-degree rape charges then the issue was, by definition, not collateral.  It appears from the record that the prosecution proffered this evidence with the intent to argue that petitioner accomplished sexual intercourse by the implied threat of further abuse.  Indeed, that offer of proof was consistent with the judge's instruction to the jury that forcible compulsion is accomplished either by the use of physical force or "by a threat which may be expressed or implied which places a person in fear of immediate death or physical injury to herself."  ECF No. 13 at 126.  While that theory did not feature prominently in the closing — the prosecution instead focused on the acts of abuse contemporaneous to the rape[3] — the petitioner

---

[3] In closing, the prosecution argued with respect to the first count of rape in the first degree that "the way I've proven [forcible compulsion] beyond a reasonable doubt  is the [petitioner] demanded that [the victim] take off her nightgown, then he pulled her to the bed, the position he wanted her on the bed, he made her bend over face forward and he came from behind her and he repeatedly punched her in the back and then reached for the lubricant and inserted his penis inside of her vagina.  That is sexual intercourse by forcible compulsion."  ECF No. 13 at 110.  On the other count of rape in the first degree, the prosecutor argued that petitioner "finally agreed to end the torture but told her that he needed to finish it off because he needed to ejaculate, [the victim] had just been beat[en] and raped for three hours, he didn't need to hit her again, it was enough,

was still entitled to attack the evidence against him according to the purpose for which it was introduced.

Still, petitioner has failed to show that any of the claimed errors prejudiced him by causing a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Petitioner had ample opportunity to confront the victim with past inconsistent statements and otherwise challenge her credibility on cross-examination. Indeed, petitioner pressed the victim about inconsistencies in the information she reported on the very medical records he later sought to introduce. Petitioner also testified to the victim's alleged history of false accusations against him at trial. While some of the excluded evidence was arguably not collateral, none was so weighty that its absence from the trial rose to the level of prejudice sufficient to justify habeas relief.

E. *Duplicity*

Duplicity occurs when the indictment "charge[s] more than one offense in a single count." *United States v. Crisci*, 273 F.3d 235, 238 (2d Cir. 2001). The Second Circuit has held that a duplicitous indictment risks "impair[ing] a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *Id.* Petitioner argues that the counts in the indictment were duplicitous because the two rape counts against him included ten different acts of penetration testified to by the victim. ECF No. 9-1 at 27 (brief on direct appeal); ECF No. 11 at 155 (victim trial testimony). But that assertion is belied by the record — the judge repeatedly instructed the jury that the charged counts related only to single, specific acts of penetration. ECF No. 13 at 135–36 ("The first and

---

that she was afraid that he would beat her again to make out the element of forcible compulsion and I ask that you listen carefully to the judge on that charge." *Id.* at 111.

second count [first and third degree rape] relate to the first incident of penetration that was testified to by the complain[ant] . . . and the Counts 3 and 4 [first and third degree rape] relate to the last incident of penetration for which she provided testimony"); *id.* at 152 (repeating instruction). Because the counts contained in the indictment charged only single acts of penetration, they were not duplicitous.

Petitioner has also not shown any prejudice flowing from the claimed duplicity. *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (holding that prejudice is an element of a duplicitous indictment challenge under the Federal Rules of Criminal Procedure); *Brecht*, 507 U.S. at 623 (establishing the harmless error standard in habeas proceedings). The policy considerations guiding the duplicity prejudice analysis include: (1) avoiding uncertainty of general guilty verdict by concealing finding of guilty as to one crime and not guilty as to other, (2) avoiding risk that jurors may not have been unanimous as to any one of the crimes charged, (3) assuring the defendant receives adequate notice of charged crimes, (4) providing the basis for appropriate sentencing, and (5) providing adequate protection against double jeopardy in subsequent prosecution. *Sturdivant*, 244 F.3d at 75 (citing *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981)).

None of those rationales are implicated here. First and foremost, the record establishes that the petitioner was well-informed of the charges against him because he challenged the nine counts of rape originally charged as *multiplicitous*, leading the prosecution to drop seven of those charges, and leaving the two counts petitioner now challenges as *duplicitous*. ECF No. 9-5 at 6–7. In effect, petitioner argues that the remedy he sought and obtained for his earlier complaint now forms the basis for habeas relief. There is little indication that the jury was likely to reach conflicting verdicts about whether petitioner committed one act of penetration but not another, since the acts took place as part of one continuing attack and were all supported by same testimony. "[W]hen a jury returns a guilty verdict on [a count of] an indictment charging several acts in the conjunctive

14

. . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Griffin v. United States*, 502 U.S. 46, 56–57 (1991) (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)). To the extent petitioner claims to be prejudiced with respect to sentencing, that argument is seriously undermined by the fact that the Appellate Division has already modified his sentences on the rape counts to run concurrently. *Turner*, 145 A.D.3d at 745.

An impermissibly duplicitous indictment can form the basis for habeas relief only if the error was so egregious that it deprived petitioner of his constitutional right to due process by "fatally infect[ing] the trial" with an absence of "fundamental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236 (1941); *see also Dowling*, 493 U.S. at 352–53 (holding that the fundamental fairness standard is "very narrow[]" and is met only where an error "violates fundamental conceptions of justice which lie at the base of our civil and political institutions"). Because the counts contained in the indictment were not duplicitous, petitioner cannot make that showing.

F. *Sentence*

Petitioner attempts to renew his claim that the sentence imposed was excessive. That claim was presented to the Appellate Division as implicating only state law grounds, *see* N.Y. Crim. Proc. Law § 470.15(3)(c). To the extent petitioner raises an unexhausted constitutional claim challenging the length of his sentence as excessive, that claim is denied as meritless. The Eighth Amendment prohibits "cruel and unusual punishments," a protection that "encompasses a narrow proportionality principle" prohibiting "only extreme sentences that are grossly disproportionate to the crime." U.S. Const. amend. VIII; *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, *J.*, concurring). Petitioner's sentence fell within the range authorized by state law, which is usually enough to end the constitutional inquiry. *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992) (*per curiam*); *but see Solem v. Helm*, 463 U.S. 277, 290 (1983); *Weems v. United States*, 217 U.S. 349,

15

381–82 (1910).   Nothing in petitioner's briefing to the Appellate Division or before this court suggests that his sentence for the serious crimes of rape and assault satisfies the "extraordinarily high standard for challenging a legally imposed sentence" under the Eighth Amendment.  *Edwards v. Capra*, 2020 WL 7385694, at *3 (E.D.N.Y. Dec. 16, 2020).

## CONCLUSION

The petition for relief pursuant to 28 U.S.C. § 2254 is denied.  A certificate of appealability is denied.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
April 21, 2021

Edward R. Korman
United States District Judge